Dear Judge Jefferson:
This office is in receipt of your request for an opinion of the Attorney General in regard to salary adjustments. You set forth the following relevant facts:
 On October 14, 1997 the Monroe City Council adopted a budget amendment which provided additional funding to the Monroe City Court for the purpose of salary adjustments. The funding was for two-thirds of the fiscal year. On November 2, 1997 the status change forms were submitted by the Court to the city's personnel office for implementation of the salary adjustments with a retroactive date of September 1, 1997 which date represented the starting point for the two-thirds fiscal year. The Mayor did not sign the status changes on the status forms until November 19, 1997 and indicated that the personnel changes on the status forms are only effective upon his signature. The status change forms were signed by me as presiding judge of the court.
Based upon these facts, you ask the following questions:
 1. Which of the following is the effective date of the salary adjustments for Court personnel?
 A. Sept. 1, 1997, the starting date for which the budget adjustment funds were based upon;
 B. Oct. 14, 1997, the date which the City Council approved the budget adjustment;
 C. Nov. 2, 1997, the date which the status change forms were signed by the Court; or
 D. Nov. 19, 1997, the date which the Mayor signed the status change forms.
 2. Once the City Council has appropriated funds for the Court's budget, does the Mayor have any authority to approve or disapprove the expenditures in that Budget by the Court?
 3. After the Court has selected its personnel, in order for the action to be effective, is the signature of the Mayor required to employ the personnel, set the rate of pay and to make subsequent changes in the status of the court personnel?
 4. Can the City of Monroe require City Court personnel to take a city sponsored drug screen test as a prerequisite for employment by the Court?
 5. Does the fact that the City handles the personnel and payroll paperwork for Court employees amount to a relinquishment by the Court of its authority to exercise control, in toto, of its employees without interference by the City?
This office has recognized that a budget cannot be amended to make retroactive salary increases for public employees, finding this is prohibited by Art. 7, Sec. 14 La. Const. 1974, and for pay raises to be legal they must be in the form of salary increases for the future. Atty. Gen. Op. 97-203.
Therefore, we would conclude inasmuch as budget amendments must be by the council, the increase could not be effective until the amendment is properly adopted by approval of the council. However, we do not feel the city's internal procedure requiring submission of status change forms should delay the effective date of the salary increase, but only the implementation of the increase from its effective date. Consequently, we find that salary adjustments can have prospective application from October 14, 1997, which we have been informed is the effective date of the budget amendment.
In answer to your inquiry if the Mayor has any authority to approve or disapprove the expenditure of funds that were appropriated by the City Council for the court's budget, we would conclude that the Mayor does not have authority over the expenditure of funds previously budgeted for the Court, and his position in regard to the budgeted payments is ministerial.
You also ask if personnel selection made by the court requires the signature of the Mayor to become effective for the employment, and to set the salary or make changes in the status of the court personnel.
In Atty. Gen. Op. No. 85-393 this office observed that employees in the municipal court would be the marshal, clerk of court, deputies and clerical personnel, and that the minimum salaries for the marshal, clerk and deputies are provided for by statute with any amount in excess being fixed by the governing authorities. It was further noted that criminal court funds could be used to defray operational expenses of the court, clerical fees or other similar expenditures as may be approved by the judge. Since no other statutory authority was found for the expenditure of any funds towards salary enhancement or equipment, it was concluded that any expenditure from the municipal general fund would require an appropriation from the council subject to budget procedures.
This office set forth the various statutes relating to the funding of the City Court system in Atty. Gen. Op. No 97-474, and concluded as follows:
 * * * Louisiana law unequivocally places the burden of funding the salaries of the city court judges, marshals, deputy marshals, clerks and deputy clerks squarely on the City and Parish. Further, the law clearly places the responsibility of providing suitable courtrooms and offices for the judge, clerk and marshal on the City. Finally, the City is primarily responsible for the expenses of operation and maintenance of these courtrooms and offices.
In this opinion the power of the Mayor to veto an ordinance of the council to fund salaries and operational expenses of the Court was recognized, but it was observed the veto may be overridden by the Council. Additionally, the alternative of a mandamus was noted. With reliance upon W.T. McCain v. GrantParish Police Jury, 440 So.2d 1369 (La App. 1983), it was stated that the Court may compel the City to perform its statutory responsibility to fund the salaries and operational expenses of the Court system.
This office has noted that Monroe has a Home Rule Charter with the legislative powers of the city vested in the city council and the executive and administrative powers are vested in the Mayor. It is stated the council has sole authority to appropriate funds and adopt an operating budget, and the Mayor is given the power to supervise the administration of all departments and agencies of city government. The Charter affirmatively charges him with the power and duty to appoint, suspend, or remove city administrative officers and employees, or to delegate that power and duty to administrative officers. Atty. Gen. Op. Nos. 88-190, 81-777.
While the City is obligated to contribute to the funding of the City Court, we do not find that the City Court is a department of the City Government. In Cosenza v. Aetna Ins., 341 So.2d 1304
(La.App 1977) the court found that a City Judge was a state office and while the parish in part funded the Court it was not the employer or master of the City Court. Similarly, it must be concluded it does not fall under the supervision of the Mayor, and his signature is not required to employ personnel, set the rate of pay or make changes in the status of the court personnel.
Since the court personnel are not city employees, we do not find that they would be subject to testing as other city employee.
This office stated in Atty. Gen. Op. No. 79-479 that a City court judge does not have a "blank check" with regard to expenses of operation of the city court "and must comply with budgetary requirements in seeking payment of expenses of operation and maintenance of court and office." It was further stated that fiscal responsibility demands that the city court judge submit a budget to the municipal governing authority in advance of making any expenditure for which the city would have any liability. However, expenditures from the court fund under Section 1899 may be accomplished by the judge for any operational expense in his sound discretion.
Therefore, we would conclude that determination of control of payments relative to the city court expense will depend upon the source used to pay the expense, and any expense that is the responsibility of the city from its general budget must be in accordance with the budgetary procedure established in the Home Rule Charter. However, the paperwork being handled by the city does not amount to relinquishment by the court of its authority to exercise control of its employees, but does require the court to follow the fiscal procedures of the city.
We hope this sufficiently answers your inquiry,
 Sincerely yours, RICHARD P. IEYOUB Attorney General
 By: _________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR